IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40729-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVAN WALTER RICHARDSON, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

HILL, J. — A jury convicted Evan Richardson of two counts of child molestation in the first degree as to P.W. and two counts of child molestation in the first degree as to K.F. The jury also found Richardson was in a position of trust to facilitate the commission of these crimes. The trial court sentenced Richardson to an exceptional upward sentence and imposed various community custody conditions.

On appeal, Richardson argues (1) the State presented insufficient evidence to establish he was in a position of trust to facilitate the commission of child molestation as to K.F., (2) the trial court abused its discretion in denying his motion to sever, (3) witness misconduct violated his right to a fair trial, and (4) the community custody condition requiring that he remain within geographic boundaries as set by his community custody officer (CCO) should be struck as unconstitutionally vague.

We affirm Richardson's convictions and sentence.

BACKGROUND

In March 2023, P.W. disclosed that her stepfather, Evan Richardson, had been touching her inappropriately while they watched television. The Spokane Police Department (SPD) and Child Protective Services opened an investigation.

During the investigation, SPD discovered that another victim, K.F., had made similar allegations against Richardson in 2007 when K.F. was six years old. In that matter, Lisa Powell and Katherine Buske, Powell's daughter, ran a daycare out of their residence next to K.F.'s maternal grandmother. Nicole Stonehouse, K.F.'s mother, would leave K.F. in Powell's and Buske's care during the day while she was working. Richardson, who was married to Buske and lived at the residence, would sometimes watch K.F. when Powell and Buske were occupied or were in other rooms of the house. Stonehouse was unaware that Richardson and K.F. were sometimes left alone together. In May 2007, K.F. disclosed that Richardson was touching her inappropriately. SPD eventually referred the matter to the State, which elected not to pursue charges at that time.

In 2023, the State was in possession of both P.W.'s and K.F.'s allegations and charged Richardson with two counts of child molestation in the first degree as to each victim. The defense filed a motion to sever the offenses prior to trial. The court denied the motion. At the close of trial, the jury returned a guilty verdict on all four counts and

further found Richardson committed the aggravating factor of using a position of trust to facilitate the commission of the crimes as to each victim.

The trial court sentenced Richardson to an exceptional sentence upward of 224 months to life. The court also imposed community custody conditions. Community custody condition 8, which Richardson challenges on appeal, requires that he remain within a geographic boundary as set forth in writing by his CCO.

ANALYSIS

*Position of Trust*

Richardson argues insufficient evidence shows he was in a position of trust as to K.F. because the evidence established that (1) he was never paid by K.F.'s mother to watch K.F. nor did K.F.'s mother agree to such an arrangement; (2) he would watch K.F. only if Buske was not around; and (3) he was merely an occupant of the home. Richardson further argues that no evidence reveals how long he knew K.F. or the nature of their relationship.

This court reviews claims of insufficient evidence by asking "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the State." *State v. Treat*, 109 Wn. App. 419, 426, 35 P.3d 1192 (2001). "'In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence.'" *State v. Zghair*, 4 Wn.3d 610, 620, 567 P.3d 1 (2025) (quoting *State v.*

*Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)); *State v. Jackson*, 145 Wn. App. 814, 818, 187 P.3d 321 (2008). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Unchallenged findings of fact are verities on appeal." *State v. Veltri*, 136 Wn. App. 818, 821, 150 P.3d 1178 (2007).

This court applies a two-part inquiry when analyzing the abuse of trust sentencing aggravator outlined in RCW 9.94A.535(3)(n): (1) "whether the defendant was in a position of trust," and (2) "whether this position of trust was used to facilitate the commission of the offense." *State v. Bedker*, 74 Wn. App. 87, 95, 871 P.2d 673 (1994).

Richardson relies on *State v. Stuhr*, 58 Wn. App. 660, 794 P.2d 1297 (1990), to support his argument that he was not in a position of trust as to K.F. In that case, Clark Stuhr was a guest in the home of an 80-year-old man, whom he murdered. *Id*. at 662. This court concluded that there was "absolutely nothing to show that Stuhr's status as a houseguest was used to facilitate his commission of [the] murder; rather, it merely placed him in close proximity to his victim at a time when no one else was in the home." *Id*. at 663. Further, there was "no evidence that Stuhr was acting as a caretaker for the victim or had been left alone with him because the victim or his family reposed some particular trust or confidence in Stuhr." *Id*. Therefore, the aggravating factor was reversed. *Id*. at 663-64.

The facts of the present case are distinguishable from *Stuhr*. While the record does not contain any evidence establishing that Stonehouse specifically entrusted K.F. to Richardson's care, there is evidence that Buske and Powell occasionally entrusted Richardson with K.F.'s care. As jury instruction 26, which is unchallenged on appeal, informed the jury, there does not *need* to be a relationship of trust between the victim and the defendant, and it is sufficient if there is a relationship of trust between the defendant and someone who entrusted the victim to the defendant's care. Further, Richardson's responsibilities for K.F., a six-year-old girl, allowed him to develop a relationship of trust with the child.

We therefore conclude that sufficient evidence supports the aggravating factor as to K.F.

*Severance*

Richardson argues that the court abused its discretion when it denied his motion to sever the charges involving P.W. from those involving K.F.[1]

"A trial court's ruling on a motion for severance will be reversed only for manifest abuse of discretion." *State v. Eastabrook*, 58 Wn. App. 805, 811, 795 P.2d 151 (1990); *State v. Nation*, 110 Wn. App. 651, 659, 41 P.3d 1204 (2002). "Where a trial court

---

[1] He also contends that the court's denial of the motion violated his right to a fair trial, but he does not elaborate on this argument or cite to any authority. We therefore decline to address this argument.

abuses its discretion in denying a motion to sever, we reverse only if the defendant can show that he or she was prejudiced by the decision." *State v. McCabe*, 26 Wn. App. 2d 86, 95, 526 P.3d 891 (2023).

"The law does not favor separate trials." *State v. Medina*, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002). CrR 4.3 provides, in relevant part:

> (a) Joinder of Offenses. Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
> (1) Are of the same or similar character, even if not part of a single scheme or plan; or
> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

(Emphasis omitted.) "Defendants seeking severance must not only establish that prejudicial effects of joinder have been produced, but they must also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy." *State v. Bythrow*, 114 Wn.2d 713, 722, 790 P.2d 154 (1990). "In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

*Factor 1: Strength of Evidence*

Richardson argues that factor 1 weighs against joinder because, although the trial

court determined the evidence was strong as to the counts related to P.W. (counts 1 and

2) and the counts related to K.F. (counts 3 and 4), the evidence supporting counts 1 and 2

is *stronger* than that which supports counts 3 and 4. Notably, Richardson does not argue

that the evidence supporting counts 3 and 4 is not strong, only that it differs from counts

1 and 2.

While the facts supporting each count are not identical, the distinctions Richardson

attempts to draw do not establish that the counts related to K.F. are weaker than those

related to P.W. Even the passage of time between the incidents is insignificant as K.F.

reported the abuse near the time it occurred. We therefore agree with the trial court that

similarly strong evidence supports each count.

*Factor 2: Clarity of Defenses*

Richardson argues that factor 2 weighs in favor of severance because, although

general denial was his defense to all counts, he may have offered selective testimony in

his own defense as to his established relationship with P.W. and would not have offered

similar testimony regarding K.F.

"The likelihood that joinder will cause a jury to be confused as to the accused's

defenses is very small where the defense is identical on each charge." *Russell*, 125

Wn.2d at 64. "A defendant's desire to testify only on one count requires severance only

if a defendant makes a 'convincing showing that [they have] important testimony to give concerning one count and a strong need to refrain from testifying about another.'" *Id.* at 65 (quoting *State v. Watkins*, 53 Wn. App. 264, 270, 766 P.2d 484 (1989)).

In *Russell*, the defendant similarly expressed that he might have wished to testify as to only one count charged against him. Nevertheless, he failed to make an offer of proof as to why selective testimony was necessary to avoid prejudice. The Washington State Supreme Court did "not find the clarity of [Russell's] defenses prejudiced by joinder," given his failure to make an offer of proof. *Id.* at 65-66.

Here, like the defendant in *State v. Russell*, Richardson indicated that he may have wanted to testify against one of the victims, but not both. Yet Richardson did not (1) make an offer of proof in his motion to the trial court as to which counts he sought to offer testimony on, (2) make an offer of proof as to what he may say if he testified, or (3) establish that prejudice would result from his decision to testify on certain counts and not on others. Therefore, like in *Russell*, Richardson's failure to make an offer of proof precludes a determination on whether joinder affected his decision not to testify.

*Factor 3: Jury Instructions*

Richardson argues that factor 3 supports separate trials for K.F. and P.W. because, despite the trial court informing the jury that it was to decide each count separately, the jury was unlikely to be able to compartmentalize the evidence supporting each count.

8

"Jurors are presumed to follow instructions." *State v. Grisby*, 97 Wn.2d 493, 509, 647 P.2d 6 (1982). Here, the trial court gave the jury three separate instructions informing them of the need to consider the crimes separately, the evidence supporting each crime, and the sentencing aggravators. Jurors are presumed to follow jury instructions and the instructions set forth above directed the jury to separately consider the crimes, the evidence supporting each crime, and the sentencing aggravators.

### Factor 4: Cross-admissibility of Evidence

Richardson argues the trial court did not properly analyze the cross-admissibility of the evidence under ER 404(b) because it failed to address each step. He further argues any probative value in admitting the evidence is outweighed by its prejudicial effect.

To determine the cross-admissibility of evidence under ER 404(b), the trial court must (1) find the alleged misconduct occurred by a preponderance of the evidence; (2) identify the purpose for admission; (3) determine whether the evidence is relevant to prove an element of the crime; and (4) weigh the probative value against its prejudicial effect. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007).

The court explicitly found there was "enough information to establish a common scheme or plan" due to Richardson's role as a caregiver to both children, their similar ages, the location where the abuse occurred (the living room), and the way in which the abuse occurred. Verbatim Rep. of Proc. (VRP) (July 29, 2024) at 32. However, the court did not make explicit findings as to the other factors. While the court's oral ruling

suggested it found the conduct occurred and the evidence would tend to prove the elements of the crime, there is nothing in the record to suggest the court weighed the probative value of the evidence against its prejudicial effect.

However, we conclude this error was harmless.  The probative value of the testimony is readily apparent as part of a common scheme or plan.  The girls reported similar abuse both as to the setting in which it occurred and the manner the abuse was carried out.  Their testimony went directly to the elements of the crimes and the aggravating factors.  Any prejudice was outweighed by the probative value to show a common scheme or plan.

*Conclusion*

Having considered the four factors relevant to severance, the ultimate question becomes whether Richardson was prejudiced by the court's denial of his motion and "whether a joint trial would be so prejudicial as to outweigh concern for judicial economy."  *Bythrow*, 114 Wn.2d at 722.  Based on the forgoing, we conclude all of the factors weighed in favor of a joint trial, and the trial court did not abuse its discretion when it denied Richardson's motion to sever.

*Witness Misconduct*

Richardson argues one of the State's witnesses, Detective Brad Humphrey, committed witness misconduct by twice referencing "an uncharged crime of rape." Appellant's Opening Br. at 43.  He argues these statements were improper opinions on

Richardson's guilt "and this trial irregularity deprived Richardson of his right to a fair

trial." Appellant's Opening Br. at 41.

"The general rule is that no witness, lay or expert, may 'testify to his opinion as to

the guilt of a defendant, whether by direct statement or inference.'" *City of Seattle v.*

*Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (quoting *State v. Black*, 109 Wn.2d

336, 348, 745 P.2d 12 (1987)). Similarly,

> [w]hether testimony constitutes an impermissible opinion on guilt or
> a permissible opinion embracing an "ultimate issue" will generally depend
> on the specific circumstances of each case, including the type of witness
> involved, the specific nature of the testimony, the nature of the charges, the
> type of defense, and the other evidence before the trier of fact.

*Id.* at 579.

Richardson challenges the following statements offered by Detective Humphrey

during trial:

> [THE STATE:] Well, what—how fruitful, I suppose, is DNA in a—
> in a situation where the victim lives in the same home as the perpetrator?
>
> [DETECTIVE HUMPHREY:] In this particular investigation, it was
> not going to be—it was not going to be fruitful.
>
> [THE STATE:] Why's that?
>
> [DETECTIVE HUMPHREY:] *So [P.W.]'s allegations of sexual*
> *abuse and then her disclosure during the forensic interview indicated that*
> *there was penetration of her vagina from Mr. Richardson's—*
>
> . . . .
>
> [THE STATE:] Once you were able to finish up the investigation,
> what did you do?

> DETECTIVE [HUMPHREY:] *I forwarded charges for rape of a child first and child molestation.*

VRP (Aug. 5, 2024) at 920, 929 (emphasis added to challenged statements).

In making the first challenged comment, Detective Humphrey said there were indications that Richardson penetrated P.W.'s vagina based on P.W.'s disclosures and forensic interview. He did not express an opinion on the truth of the disclosure; he simply relayed his understanding of what P.W. said.

Detective Humphrey made the second challenged statement to explain the progression of his investigation. Stating the fact that Richardson was charged with rape in the first degree and child molestation does not amount to an expression of an opinion as to whether Richardson was guilty of those charges. Therefore, the challenged statements do not amount to improper opinions on Richardson's guilt and do not violate the related motion in limine.

Turning to whether a trial irregularity occurred, this court considers "'(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction.'" *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011) (quoting *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992)). "The appropriate inquiry is whether the testimony, when viewed against the backdrop of all the evidence, so tainted the trial that [the defendant] did not receive a fair trial." *Post*, 118 Wn.2d at 620.

Here, the admissible evidence showed Richardson touched each girl's vagina as he sat with them on the couch.  Humphrey's single mention of penetration and a reference to a charge of rape would not, when viewed against the backdrop of all the evidence, unduly taint the trial.  This is particularly true in this case where the defense attorney objected after each of Detective Humphrey's statements, the court sustained the objections, and the trial court issued a curative jury instruction prior to deliberations to "disregard any comments or statements by Detective Humphreys in regard to penetration or rape.  So please don't consider any of that testimony."  VRP (Aug. 5, 2024) at 972.

Because the jury is presumed to follow the jury instructions, this court may presume the jury did not consider Detective Humphrey's statements as they were ruled inadmissible.  We conclude, in light of all the evidence, the improper testimony was not so prejudicial to suggest Richardson did not receive a fair trial.

*Community Custody Conditions*

Richardson argues that the community custody condition requiring that he remain within a geographic boundary set by his CCO is unconstitutionally vague.  He argues that the condition (1) requires that he remain within geographic boundaries without providing any guidance or clarification as to the extent of those boundaries and (2) grants the CCO unrestricted discretion in setting the geographic boundaries.

This court reviews a sentencing court's decision to impose a certain community custody condition for an abuse of discretion and will reverse only if the imposition of the

13

condition was manifestly unreasonable. *State v. Geyer*, 19 Wn. App. 2d 321, 326, 496

P.3d 322 (2021); *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019). "The

imposition of an unconstitutional condition is manifestly unreasonable." *Peters*, 10 Wn.

App. 2d at 583. For purposes of analyzing the instant issue,

> a community custody condition, is unconstitutionally vague if (1) it
> does not sufficiently define the proscribed conduct so an ordinary person
> can understand the prohibition or (2) it does not provide sufficiently
> ascertainable standards to protect against arbitrary enforcement.

*State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

Richardson challenges the mandatory community custody condition 8 as being

unconstitutionally vague. The condition requires that he "[r]emain within [a] geographic

boundary, as set forth in writing by the Community Corrections Officer." Clerk's Papers

at 310. This court recently addressed this exact issue in *State v. Lundstrom*, 34 Wn. App.

2d 977, 572 P.3d 1243 (2025). We held that the condition was not unconstitutionally

vague, reasoning,

> the court complied with its statutory obligation to order Lundstrom to
> follow certain conditions that the legislature has authorized the CCO
> to impose. *See* RCW 9.94A.703(1)(b). And one of the conditions the
> legislature has determined a CCO must impose on an offender is an
> order to "[r]emain within prescribed geographical boundaries." RCW
> 9.94A.704(3)(b).

*Id.* at 983.

Like *Lundstrom*, we conclude the community custody condition restricting

Richardson to a geographical boundary set by his CCO is not unconstitutionally vague.

No. 40729-2-III
*State v. Richardson*

CONCLUSION

We affirm Richardson's convictions, aggravating factors, and sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____
Staab, C.J.

_____
Cooney, J.

*Tristen L. Worthen*
*Clerk/Administrator*

*(509) 456-3082*
*TDD #1-800-833-6388*

# The Court of Appeals
## of the
## State of Washington
### Division III

*500 N. Cedar St.*
*Spokane, WA 99201-1905*

*Fax (509) 456-4288*
*http://www.courts.wa.gov/courts*



August 4, 2026

**E-Mail:**
Laura Michelle Chuang
Northwest Appellate Law, PLLC
PO Box 8679
Spokane, WA 99203-0679
laura@nwappellatelaw.com

**E-Mail:**
Benjamin Nickol
Spokane County Prosecuting Attorney's Office
1100 W Mallon Ave
Spokane, WA 99260-0270
bnickol@spokanecounty.gov
scaappeals@spokanecounty.org

CASE # 407292
State of Washington v. Evan Walter Richardson, Jr.
SPOKANE COUNTY SUPERIOR COURT No. 2311047632

Counsel:

Enclosed please find a copy of the opinion filed by the court today.

A party need not file a motion for reconsideration as a prerequisite to discretionary review of this decision by the Washington Supreme Court. RAP 13.3(b), 13.4(a). If a motion for reconsideration is filed, it should state with particularity the points of law or fact that the moving party contends this court has overlooked or misapprehended, together with a brief argument on the points raised. RAP 12.4(c). Motions for reconsideration that merely reargue the case should not be filed.

Motions for reconsideration, if any, must be filed within twenty (20) days after the filing of a decision. RAP 12.4(b). If no motion for reconsideration is filed, any petition for review to the Supreme Court must be filed in this court within thirty (30) days after the filing of the decision. RAP 13.4(a). The motion for reconsideration and petition for review must be <u>received</u> by this court on or before the dates each is due. RAP 18.5(c).

Sincerely,

Tristen Worthen
Clerk/Administrator

TLW: hcm
E-Mail: Honorable Jacquelyn M. High-Edward
Mailed: Evan W. Richardson C/O Coyote Ridge Corrections Center